2024 IL App (2d) 230506-U
No. 2-23-0506
Order filed February 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 23-CF-964 23-CF-1423 |
| JOEY M. JACKSON, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The State presented clear and convincing evidence that no conditions could mitigate the real and present threat to the safety of persons posed by defendant's pretrial release, and (2) the trial court's oral and written findings at successive detention hearings, read together, were sufficient under the Act.

¶ 2     Defendant, Joey M. Jackson, appeals the November 2, 2023, and November 16, 2023, orders of the circuit court of Lake County denying his request for pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), commonly known as the Pretrial Fairness Act (Act). See Pub. Acts. 101-652, § 10-255 (eff. Jan.

1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023).[1] Defendant argues that the State failed to meet its burden of proving that (1) the proof is evident or the presumption great that he committed the charged offenses, (2) he was a threat to any individual or the community, and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. Defendant also argues that the trial court erred in denying his motion to reconsider his pretrial detention. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On March 2, 2023, defendant was arrested for and charged by complaint with several misdemeanor counts of driving under the influence (DUI) (625 ILCS 5/11-501 (West 2022)). Defendant was released on those pending charges. Three months later, defendant was arrested and charged with two counts of domestic battery (720 ILCS 5/12-3.2 (West 2022)), enhanced due to defendant having been previously convicted of domestic battery. Defendant's bond was set at $50,000 (10% to apply). Defendant was unable to post bond, so he remained incarcerated. On July 20, 2023, defendant's misdemeanor DUI charges were upgraded to felonies, including one count of a class 2, non-probationable DUI (625 ILCS 5/11-501(d)(2)(C) (West 2022)). Defendant's bond remained the same.

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act. However, neither the titles "Pretrial Fairness Act" nor "SAFE-T Act" is official, as neither appears in the Illinois Compiled Statutes or the public acts. *Rowe*, 2023 IL 129248, ¶ 4 n.1.

¶ 5        A pretrial services "Public Safety Assessment Report" (Report) was completed on May 16, 2023. The Report indicated that defendant was 39 years of age and scored a four on the "failure to appear" scale and a five on the "new criminal activity" scale.[2] The Report also reflected that defendant had a prior failure to appear, although it was older than two years. The Report noted that defendant had prior misdemeanor and felony convictions, which included convictions of driving while license revoked (2008, 2012, 2016), DUI (2014), aggravated DUI (2010), possession of cannabis (2008), aggravated battery of a peace officer (2005), and domestic battery (2001).

¶ 6        On September 11, 2023, the State filed a "Verified Petition to Detain" (Petition) pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) on both the aggravated DUI and domestic battery charges. The State requested the court to order the detention of defendant pending trial, alleging that his current offenses and criminal history made him a threat to persons, which no form of pretrial monitoring could mitigate. No action was taken on the State's Petition, and defendant, still not having posted bond, remained incarcerated.

¶ 7        Meanwhile, on October 20, 2023, defendant filed a *pro se* motion for release, which defense counsel later adopted (Motion). In the Motion, defendant argued that the State failed to file a petition to detain within 21 days, that he could not afford to post bond, and that there existed compelling reasons to release him. A hearing on defendant's Motion was held on November 2, 2023.

¶ 8        At that hearing, the State acknowledged that it had filed a verified petition to detain. The State first addressed defendant's domestic battery charges. As to the factual basis, the State

_____

[2]The Report does not indicate the scoring range of either the "failure to appear" or "new criminal activity" scales.

proffered that on May 15, 2023, defendant was with his girlfriend, Shadae Gibson. A neighbor reported hearing defendant and Gibson argue for over two hours, and also heard defendant threaten to kill Gibson. The neighbor heard the argument go outside, and when she looked out her window, she saw defendant chasing Gibson with "some type of stick in his hand." The victim told police that defendant then chased her and punched her four times in the face. Defendant admitted to police that he had a piece of wood from a bed frame and was chasing Gibson, but he did not say that he hit her. The State noted that defendant had a prior domestic battery conviction from 2001. Turning to defendant's DUI charges, the State proffered that Zion police responded to a report of a car accident. The complaining witness indicated that her car was parked in her driveway and that she saw defendant strike her vehicle and then remain in the driveway. When the police made contact with defendant, he was reported to be highly intoxicated, with glassy eyes, slurred speech, and the strong odor of alcohol. The first thing he said to the police was: "you going to take me to jail, just take me to jail." Defendant said that he had consumed a pint of Jose Cuervo that day.

¶ 9     In response, defense counsel argued that the State failed to meet its burden. Defense counsel explained that the defendant had been accepted into drug court and was applying for DUI court. Counsel noted that in the domestic battery incident, Gibson did not sustain any physical injuries. Counsel further argued that defendant had not been arrested since 2016 and had no criminal history between 2016 and the instant matters. Additionally, counsel noted that the DUI took place in a driveway, not on a public roadway, and thus should not be seen as defendant endangering the community. Finally, defense counsel indicated that defendant's incarceration had created hardship, such as defendant having to move his belongings as he had lost housing and defendant's inability to work while incarcerated. Counsel informed the court that defendant supports his 7-year-old son, and that his children's mother had recently passed away.

¶ 10   The court found the offenses with which defendant was charged to be detainable. The court further found that the proof is evident or the presumption great that defendant committed the offenses. The court noted it had considered the pretrial Report, the results of the risk assessment instrument, and defendant's criminal history. Based on these facts, the court stated "the question then becomes whether or there are any other conditions that could be sufficient to mitigate that threat. And the court finds based upon everything that's here that that's not present. You need to stay in for a little bit."

¶ 11   In response to the trial court's findings, defendant told the trial court, "I haven't seen my kids, your honor. I've been here a long time." The court responded, "You've been here—I mean from my perspective, long enough that this should be figured out." After further discussion, defendant asked the trial court if he could have any restrictions such as an "ankle bracelet." The court responded, "Actually, we don't have ankle bracelets." Defendant argued that he was not a flight risk and had never "jumped bail" or skipped court, to which the trial court indicated that it would revisit the matter in two weeks. The court then signed a preprinted order of detention, checking boxes where applicable to reflect its ruling. It checked boxes and found that the defendant was charged with detainable offenses and that he posed a real and present threat to the safety of any person/s or the community, based on the specific articulable facts of the case. The form order provided preprinted language with a finding that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons for offenses listed in 725 ILCS 5/110-6.1(a)(1) through (7) OR the defendant's willful flight for offenses listed in 725 ILCS 5/110-6.1(a)(8)," and that "less restrictive conditions would not assure safety to the community."

¶ 12   On November 16, 2023, the matter returned to court for review of defendant's detention. The defense attorney reported that defendant was not accepted into DUI court, but was still eligible

for drug court. After discussion with defendant about specialty courts and findings discussed in further detail below, the trial court determined that "continued detention under the law [was] appropriate." Thereafter, defendant filed a timely notice of appeal.

¶ 13                                                    II. ANALYSIS

¶ 14    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations (qualifying offenses). 725 ILCS 5/110-2(a), 110-6.1 (West 2022). For most of the qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed the offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 15    We review a trial court's decision to detain a defendant using a two-part standard of review. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations,

including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat, and whether any conditions would mitigate that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite that to the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. People v. Williams, 2022 IL App (2d) 200455, ¶ 52. Questions of law, such as the construction of statutes, are reviewed *de novo*. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 16.

¶ 16                          A. Arguments Not Addressed in the Memorandum

¶ 17    In his notice of appeal, defendant raises four arguments. In his Memorandum to this court, however, he addresses only the third argument raised in his notice of appeal (that the State failed to meet its burden of proof that no conditions could mitigate the threat) and then he adds a contention not raised in the Notice of Appeal, that the trial court's written findings were insufficient as to why he should be denied pretrial release.

¶ 18    This court recently dealt with the issue presented when the defendant files a memorandum that does not address arguments raised in the notice of appeal. We held in *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22, that if a memorandum is filed, "it is the controlling document for identifying issues or claims on appeal, except in limited circumstances such as to determine jurisdictional issues." *Rollins*, 2024 IL App (2d) 230372, ¶ 22. Where arguments in the notice of appeal are not raised in the memorandum, those are deemed abandoned. *Rollins*, 2024 IL App (2d) 230372, ¶ 22. In so holding, *Rollins* followed *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42, adopted the rule "[a]s a matter of practicality and considering the long-standing principles of

appellate procedure…." Because the memorandum abandons some of the arguments raised in the notice of appeal, we will address only those arguments discussed in the memorandum.

¶ 19                          B. Conditions of Release/Specific Findings

¶ 20    Defendant contends that the trial court erred in finding that the State proved by clear and convincing evidence that there are no conditions that could mitigate the risk of his release. Defendant's argument is twofold. First, defendant argues that the State failed to provide any individualized evidence that no condition or combination of conditions would mitigate the threat posed by his release. Second, defendant asserts that the error was compounded because the trial court failed to either orally enunciate or enter a written finding as to why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 21    We first address defendant's contention that the State did not meet its burden to show that no conditions of release can mitigate his alleged dangerousness. According to defendant, the State did not offer any evidence or explanation as to this element. We disagree.

¶ 22    The Act instructs that, in determining whether a specific threat could be mitigated through the imposition of conditions of pretrial release, the trial court is to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a)(1)-(5) (West 2022). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or

alcohol abuse, conduct, \*\*\* criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).

¶ 23    Although not expressly presented in support of a claim that no conditions of release can mitigate defendant's alleged dangerousness, the State's proofs did address during the detention hearing many of the statutory factors cited above. As to the nature and circumstances of the offenses, the proffer showed that in March 2023 defendant drove while extremely intoxicated and committed a felony DUI with property damage. Then in May 2023 he exhibited extremely aggressive, combative, and disorderly behavior, in that he chased the victim down a public street while wielding an item which could have been used as a cudgel, and then punched her. As to the history and characteristics of defendant, defendant's criminal history was significant and long-standing. It included several sentences to prison and convictions from which it could be concluded he had a history of violence, of not following the laws against driving while revoked, of substance abuse, and of probation revocations, all of which might support the conclusion that defendant was dangerous and potentially unreliable as it relates to following conditions of release. There was also evidence that the defendant committed the instant domestic battery while on release for the current DUI. As to the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, the evidence showed that despite previous significant justice interventions, and despite being on pretrial release for DUI, defendant allegedly chased a person down the street and punched her four times in the face.

¶ 24    Citing *People v. Herrera*, 2023 IL App (1st) 231801, the defense also argues that the State failed to prove that SCRAM technology would not have mitigated the risk and that the court failed to address this issue. First, we find *Herrera* readily distinguishable. In that case, the trial court rejected the suggestion of the use of SCRAM monitoring, stating, "I don't have the authority to do that under the [Act]." *Herrera*, 2023 IL App (1st) 231801, ¶ 25. After examining the Act and determining that the trial court did have that authority under section 110-10(b)(5) of the Act, the appellate court vacated and remanded the order of detention. *Id.* ¶¶ 29, 37; 725 ILCS 5/110-10(b)(5) (West 2022) (allowing pretrial release of the defendant under the direct supervision of pretrial services with an approved electronic home monitoring device). *Herrera* also noted that where a requested condition of release is not available in a jurisdiction, that a record be made of that fact.

¶ 25    Here, the trial court made no error of law regarding available conditions under the Act and it provided a record that "ankle monitors" were not available in Lake County. SCRAM refers to the use of a transdermal monitoring device that detects the presence of alcohol in the wearer's perspiration. *What Is The SCRAM CAM Bracelet And How Does It Work*, https://www.scramsystems.com/scram-blog/what-is-scram-cam-bracelet-how-does-it-work/ (last visited Feb. 13, 2024) [https://perma.cc/9KDE-34SR]. SCRAM was not mentioned in the hearings below. "It is well settled that issues not raised in the trial court are deemed [forfeited] and may not be raised for the first time on appeal." *People v. Raymond*, 2024 IL App (5th) 230781-U, ¶ 16 (Bracketed material in original).

¶ 26    In short, the evidence presented met the clear and convincing standard. As such, we reject defendant's claim that the State did not offer sufficient evidence as to why no conditions of release could mitigate the threat posed by defendant's release.

¶ 27   Defendant's second argument is that the trial court's oral and written findings failed to summarize why detention was necessary as required by section 110-6.1(h) of the Act. 725 ILCS 5/110-6.1(h)(1) (West 2022). We observe that the trial court's written findings on this issue are cursory. On both the initial detention hearing and the continued detention hearing, it signed a preprinted form that provides, in boilerplate fashion, that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons for offenses listed in 725 ILCS 5/110-6.1(a)(1) through (7) OR the defendant's willful flight for offenses listed in 725 ILCS 5/110-6.1(a)(8)." The form provides no space for the trial court to summarize its reasons for why less restrictive conditions would not serve and the court did not attach an addendum doing so. We addressed this issue previously in *People v. Valderama*, 2024 IL App (2d) 230462-U. In that case, this court observed that Lake County's form "does not track the language of the statute" (*Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2.), nor does it support compliance with the statute because it does not "contain any space for the court to list why such conditions would not avoid such a threat (nor does it allow for the selection of 'person or persons' in addition to 'the community,' any or all of which may apply in a given case under the Act)." *Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2. We also pointed out what should now be clear, that "the Act specifically requires that the court summarize its reasons for denying pretrial release *in writing* (emphasis added), '*including why less restrictive conditions would not avoid a real and present threat* to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution.'" (emphasis in original) *Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2. (citing 725 ILCS 5/110-6.1(h)(1)).

¶ 28   In *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, we discussed the Act's requirement in section 110-6.1(h)(1) of a written order with a summary of the trial court's "reasons

for concluding less restrictive conditions would not avoid" a threat to safety posed by defendant's release. 725 ILCS 5/110-6.1(h)(1) (West 2022). Looking at the Act as a whole, we found the purpose of that requirement was to ensure that detention decisions (1) were based upon specific articulable facts and individualized to each defendant, (2) provided notice to the parties of the reasons for the court's decision, and (3) preserved this reasoning for appellate review. We held that in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements. *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19.

¶ 29    Here, the trial court's oral pronouncement at the initial detention hearing is devoid of findings why any condition or combination of conditions would not mitigate the risk of his release. The court merely stated that the proof was sufficient to meet the required standard and then said: "the question becomes whether or not there are any other conditions that could be sufficient to mitigate that threat. And the Court finds based upon everything that's here that that's not present. You need to stay in for a little bit." When defendant proposed "restrictions, ankle bracelet, anything, sir?" the trial court did not explain why those conditions were not adequate, beyond merely stating, "Actually we don't have ankle bracelets." In other words, the trial court cited nothing to explain why less restrictive conditions of detention would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 30    *People v. Martin*, 2023 IL App (4th) 230826, is analogous. There, the appellate court found the trial court's "oral statement that '[defendant] needs to be detained,' with no further detail provided in its detention order, falls short of complying with 'the clear legislative directive' to address less restrictive conditions of release, a directive that significantly predates the Act." *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23. In conducting our review of these issues, we rely on

the trial court to "show[] its work." *Martin*, 2023 IL App (4th) 230826, ¶ 25. In other words, to paraphrase the court in *People v. Atterberry*, it is the trial court's obligation to give detention cases under the Act the individualized attention they deserve. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 22 ("On remand, it is the trial court's obligation to give this case the individualized attention it deserves.")

¶ 31     However, at the continued detention hearing, after a colloquy with defendant where defendant expressed his consideration of drug court as a sentencing option and his reasons for seeking pretrial release, the court more expansively elaborated that "I am not going to repeat everything I have said before, but some of the bigger things that jump out here are, including what your lawyer said, some of your cases were older. These are enhanced charges, but [the] legislature has said these are felony charges. The legislature has said these are detainable charges, and as I noted last time part of the issue was you were on the first case, which is a felony, involves substance abuse is from March 2nd, and then the second case a crime of violence, domestic battery, was May 15th. Part of it involves having one and then having the other is one of the biggest problems you have with these situations. So again without repeating everything we talked about before the Court adheres to its previous judgment [and] believes continued detention under the law is appropriate."

¶ 32     We turn now to the issue of whether the trial court's oral findings in this case satisfied the standard set forth in the statute and we find that they did. Although admittedly brief, the court's ruling at the continued hearing articulated an individualized analysis of the factors concerning the determination of dangerousness, in accord with section 110-6.1(g) of the Act, and its reasons why less restrictive conditions would not avoid the threat to safety. 725 ILCS 5/110-6.1(g), 110-6.1 (h)(1)(West 2022). The court's discussion with defendant at both hearings reveal that the court was well aware of defendant's substance abuse history. The court clearly communicated that the

reasons for detention were the defendant's significant criminal history, combined with the facts that he allegedly committed a violent offense while on pretrial release for DUI. The oral ruling—although sparse—was explicit and individualized and, read together with its written findings, was sufficient to apprise the defendant of the reasons for its rulings and to accommodate review under the Act. As the supreme court did in *In re Madison H.*, 215 Ill. 2d 364, 375 (2005)(where the Juvenile Court Act required the trial court provide a written order stating its factual basis, oral ruling could satisfy the statute), we reject a "formalistic technical" reading of the Act. Remanding this cause so that the trial court could transcribe its oral findings at the second hearing into a written order serving both rulings would not serve the interests of justice. We find no basis to disturb the trial court's order here.

¶ 33                                    IV. CONCLUSION

¶ 34    In light of the foregoing, the order of the circuit court of Lake County is affirmed.

¶ 35    Affirmed.