No. 2-24-0374
Order filed October 3, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-17 |
| LYNELL P. GLOVER, | ) ) ) | Honorable Mark L. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

*Held*: The trial court abused its discretion in failing to make the statutorily required findings in its order denying defendant pretrial release. We vacate and remand.

¶ 1 In *People v. Glover*, 2023 IL App (2d) 220178, this court reversed defendant's convictions for second degree murder and aggravated battery with a firearm because the trial court failed to grant a mistrial after learning that the jury had improper possession of the State's PowerPoint closing arguments during deliberations. The cause was remanded for a new trial.

¶ 2 On February 7, 2024, the State filed a verified petition to detain pursuant to 725 ILCS 5/110-6.1. The State alleged that (1) the proof was evident, or the presumption was great, that

defendant committed the offenses of aggravated battery with a firearm and second degree murder; (2) defendant's pretrial release would pose a real and present threat to the safety of a person, persons, or the community; and (3) there is no set of conditions which mitigate or alleviate the threats posed by defendant.

¶ 3    On February 22, 2024, defendant filed a motion to strike the State's verified petition to detain. He averred that at his initial appearance on January 4, 2021, he was ordered released with pretrial conditions, including the condition of depositing security in the amount of 10% of $1,000,000.00. He argued that the State's verified petition was untimely pursuant to 725 ILCS 5/110-6.1 which requires such a petition to be filed at defendant's first appearance, or within 21 days after defendant's arrest and release. 1130 days had passed since defendant's first appearance. Defendant further argued that because his convictions were reversed, remand constituted a continuation of the original proceedings. Thus, defendant argued, pursuant to 725 ILCS 5/110-11, "[i]f the judgment of conviction is reversed and the cause remanded for a new trial, the trial court may order that the conditions or pretrial release stand pending such trial or modify the conditions of pretrial release."

¶ 4    On March 6, 2024, the trial court held a hearing on defendant's motion to strike. The trial court found that the State's petition to detain was timely because it was filed at defendant's first appearance following the reversal and remand of his convictions. Further, the trial court found that defendant's $1,000,000.00 bond would be reinstated pursuant to 725 ILCS 5/110-11. Defendant was allowed to file a petition for release with conditions pursuant to 725 ILCS 5/110-7.5.

¶ 5    On March 14, 2024, defendant filed a petition for release pursuant to 725 ILCS 5/110-7.5 arguing that (1) the proof was not evident, nor the presumption great, that defendant committed the offenses of aggravated battery with a firearm and second degree murder; (2) defendant's

pretrial release would not pose a real and present threat to the safety of a person, persons, or the community; and (3) the State failed to meet its burden that no condition or set of conditions of pretrial release would mitigate any threat defendant posed to a person, persons, or the community.

¶ 6 On May 20, 2024, the trial court held a hearing on the State's verified petition to detain and defendant's petition for release. As to the first prong of denying defendant's pretrial release, the State proffered the trial transcripts and argued that the evidence was overwhelming that he committed the qualifying offenses of aggravated battery with a firearm and second-degree murder. The State contended that defendant's pretrial release would pose a real and present threat to the safety of a person, persons, or the community under the second prong for the following reasons:

"On January 3, 2021, the defendant was told by a friend that his car, which had been stolen a few days prior, was seen near Volo, Illinois. The defendant traveled to the location where his car had been seen. While there, the defendant observed his stolen car and began following the car. The stolen car either stalled or ran out of gas and came to a stop while defendant was chasing the car. At that point, the defendant stopped behind his stolen car and attempted to prevent the two occupants of the stolen car from running away. The defendant was armed with his girlfriend's gun. The defendant fired multiple shots, striking both of them. After a trial, the defendant was convicted of aggravated battery with a firearm and second-degree murder of [Anthony Awad]. The evidence at trial showed that the gunshots were fired from the median of the roadway. The defendant shot [Anthony Awad], who was unarmed, in the side of the neck as [Anthony Awad] was running across the street, away from the median. The defendant's actions of chasing down and confronting two individuals who had wronged him, while armed with a firearm, prove that he poses a real and present threat to the surviving victim, [Jonathan Awad], and the community. The

defendant took extensive actions to investigate his stolen car and ultimately took the law into his own hands when he tracked down, confronted, and shot and killed one of the people responsible."

¶ 7    As to the third prong, the State argued that no conditions could mitigate the threat defendant posed because he would have access to his girlfriend's weapons at their residence. The State noted that defendant planned to go back to work if released, giving him "access to being out in public." The State argued that electronic home monitoring would be rendered "practically unregulated" and "if the defendant has access to weapons and if he feels perceived slights from people in the community, *** his attitude and character and his behavior in this case show that he is a danger to the community, and there aren't conditions that can mitigate that threat."

¶ 8    As to the first prong, defendant argued that this court acknowledged in *Glover* that not only was defendant acquitted of the shooting against Jonathan Awad, but the jury found sufficient mitigation to acquit defendant of the first-degree murder charge against Anthony Awad. Defendant further cited *Glover* in which this court held that the evidence was so closely balanced that the prejudicial error that resulted from the improper inclusion of the State's PowerPoint closing argument may have been the determining factor in defendant's ultimate convictions. Defendant averred that "it would stand to reason that those factual findings by the jury, coupled with the holdings of the appellate court upon their examination of all the evidence in the trial record, would preclude the finding by clear and convincing evidence that the proof is evidence or the presumption great" that defendant committed the offenses of aggravated battery with a firearm and second-degree murder.

¶ 9    As to the second prong, defendant argued that his actions were committed "under sudden and intense passion that resulted from serious provocation." He argued that attempting to recover

his stolen property is not a crime. He called the police when he located the stolen car and was waiting for them to get to the scene. Defendant argued that it was undisputed at trial that he was attacked by Jonathan and Anthony Awad and that he was acting in self-defense when he shot at them. Since defendant's case was remanded, Jonathan Awad has been charged in Du Page County with armed violence, unlawful use of a weapon by a felon, and possessing a stolen motor vehicle. Defendant did not know Jonathan Awad prior to the January 2021 incident and did not intentionally seek out the Awads specifically.

¶ 10    As to the third prong, defendant argued that the trial court could order him to reside in a residence free of firearms. Defendant's Public Safety Assessment showed that he has no history of prior violent crimes or any felony convictions of any kind. He does have misdemeanor convictions for marijuana possession. If released, defendant has a stable residence and family. His employer noted that he would be able to return to work.

¶ 11    The trial court – the same court who presided over defendant's jury trial – made the following findings in ordering defendant to be detained pretrial:

"I recall well the facts as they were adduced during the course of the trial, and there is absolutely no question contrary to the defendant's assertion that the proof is evident, the presumption great that [defendant] committed a qualifying offense. I don't think there can be any question of that at all.

Similarly, I do find that [defendant's] release after reviewing the facts as they were adduced during the course of the trial and the arguments that were advanced today that his release would pose a real and present threat to the safety of the community. I recall certainly the facts as they were elicited, and it is true that [defendant] did use or did attempt to use force to remedy what he perceived to be some unlawful activity by others.

The nature of this offense, the fact that certainly violence was used coupled with firearm use, his conduct before and during the commission of the offense as alleged by the State I think would pose a real and present threat to the safety of the community.

I don't see, [defendant], at this point that there are conditions or any set of conditions that I could impose that would assure the community's safety given all the facts as they've been adduced in this hearing, and for those reasons, you are going to be detained pretrial. I am sensitive to the fact, [defendant], that you are in a vastly different posture than you were the first time that you were before me."

¶ 12    On June 17, 2024, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) arguing that the State failed to prove each of the three requirements for pretrial detention. Following a hearing on June 20, 2024, the trial court denied the motion, stating it had relied on the facts from the May 20, 2024, hearing, as well as facts from defendant's trial. Defendant then filed the instant appeal. Here, defendant contends that the trial court erred denying his pretrial release because the State failed to prove by clear and convincing evidence that (1) he poses a real and present threat to the safety of any person or the community; and (2) less restrictive conditions would fail to mitigate any threat posed by his release.

¶ 13    This appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v.*

---

[1] The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither of those names is official, as neither appears in the Illinois Compiled Statute or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

*Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). The Act abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 14    In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq*. Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 15    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 16    The statute provides a nonexclusive list of factors that the circuit court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the circuit court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical

condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 17     The Code instructs that, in determining whether a specific threat could be mitigated through the imposition of conditions of pretrial release, the trial court is to consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release, and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a)(1)-(5) (West 2022). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).

¶ 18     We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate

decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 19    In this case, the trial court failed to make particularized findings of fact such that we can consider the merits of the two issues raised by the defendant on appeal. Under the Code, the circuit court's detention order must make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. Emphasis supplied. 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 20    We observe that the trial court's written findings on this issue are cursory. On both the initial detention hearing and the motion for review hearing, it signed a preprinted form that provides, by way of checkbox that "defendant poses a real and present threat to the safety of any person or persons or the community" and in boilerplate fashion, that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons for offenses listed in 25 ILCS 5/110-6.1(a)(1) through (7) OR the defendant's willful flight for offenses listed in 725 ILCS 5/110-6.1(a)(8)." The form provides no space for the trial court to summarize its reasons for why less restrictive conditions would not serve and the court did not attach an addendum doing so. We addressed this issue previously in *People v. Jackson*, 2024 IL App (2d) 230506-U, ¶ 27, and also in *People v. Valderama*, 2024 IL App (2d) 230462-U.

¶ 21    In *Valderama*, this court observed that Lake County's form "does not track the language of the statute" (*Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2.), nor does it support compliance with the statute because it does not "contain any space for the court to list why such conditions would not avoid such a threat (nor does it allow for the selection of 'person or persons' in addition

to 'the community,' any or all of which may apply in a given case under the Act)." *Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2. We also pointed out what should now be abundantly clear, that "the Act specifically requires that the court summarize its reasons for denying pretrial release in writing (emphasis added), '*including why less restrictive conditions would not avoid a real and present threat* to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution.' " (Emphasis in original.) *Valderama*, 2024 IL App (2d) 230462-U, ¶ 5 n.2. (citing 725 ILCS5/110-6.1(h)(1)).

¶ 22    However, we held in *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, that an explicit and individualized oral ruling may satisfy the statute, and that in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements. But here, in the trial court's verbal ruling, it did not discuss any of the conditions of pretrial release that could be imposed or why any combination of them would not mitigate the potential threat to community safety. This omission is a serious impediment to our review, particularly when combined with the trial court's failure to articulate the nature of the threat it perceived to be posed by defendant, other than by alluding vaguely to "force," "violence," and "firearm" in the facts adduced at the trial. In determining what conditions of pretrial release, if any, will reasonably ensure the safety of a person, persons, or the community, it is necessary to examine, *inter alia*, the nature and seriousness of the real and present threat that defendant would pose if released. 725 ILCS 5/110-5(a)(4) (West 2022); see also *People v. Hurtado*, 2024 IL App (2d) 230517-U, ¶ 13 ("[T]he specific nature of the threat posed by the defendant is relevant when considering whether that threat can be mitigated by the imposition of conditions of release.").

*People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 27, appeal denied, No. 130785, 2024 WL 3496350 (Ill. July 19, 2024).

¶ 23    Here, neither the circuit court's written nor its oral findings meet the "clear legislative directive" for courts to address less restrictive conditions of release. See *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23, quoting *People v. Gil*, 2019 IL App (1st) 192419, ¶15-17. The failure of the circuit court to meet the statutory mandate of making findings summarizing its reasons for denying pretrial release is an abuse of discretion. *Id.* ¶ 24, citing *People v. Ortega*, 209 Ill. 2d 354, 360 (2004) ("Therefore, the court abused its discretion by failing to 'make a record adequate to allow meaningful review of its exercise of discretion.' " See also *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 34. In conducting our review of these issues, we rely on the trial court to "show[ ] its work." *Martin*, 2023 IL App (4th) 230826, ¶ 25 ("[T]he proper course of action [for the trial court] was to provide an explanation of its reasoning, which we would have afforded considerable deference. We cannot, however, defer to considerations the record does not show were made." Bracketed material supplied.). In other words, to paraphrase the court in *People v. Atterberry*, it is the trial court's obligation to give detention cases under the Act the individualized attention they deserve. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 22 ("On remand, it is the trial court's obligation to give this case the individualized attention it deserves.")

¶ 24    Because the findings of the circuit court were inadequate, its denial of pretrial release was an abuse of discretion. "If the Act's presumption that all persons charged with an offense are eligible for pretrial release is to have any meaning, more than is presented in this record must be required." *People v. Finch,* 2023 IL App (2d) 230381-U, ¶ 19. Accordingly, we vacate the denial of pretrial release and remand this matter to the circuit court with directions to promptly set a new detention hearing and conduct further proceedings consistent with this opinion. During the time

between the trial court's receipt of this court's mandate and the detention hearing, the trial court will retain the discretion to detain or release defendant. See 725 ILCS 5/110-6.1(c)(2).

¶ 25    Vacated and remanded with directions.