2025 IL App (2d) 24-0769-U
No. 2-24-0769
Order filed March 24, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Trial court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-17 |
| LYNELL P. GLOVER, | ) ) ) | Honorable Mark L. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Jorgenson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting the State's petition to deny defendant pretrial release and subsequently denying defendant's motion for relief where the nature and circumstances of the offense were especially violent and where the State proffered evidence showing defendant had a history of escalating violence. Affirmed.

¶ 2   At issue here is whether the trial court erred in granting the State's petition to deny defendant pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024) and subsequently denying defendant's motion for relief under Illinois Supreme Court Rule 604(h)(2). Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     This is now defendant's third appeal. In *People v. Glover*, 2023 IL App (2d) 220178 (hereinafter, "*Glover* I"), this court reversed defendant's convictions for second degree murder and aggravated battery with a firearm because the trial court failed to grant a mistrial after learning that the jury had improper possession of the State's PowerPoint closing arguments during deliberations. The cause was remanded for a new trial.

¶ 5     On remand, the State filed a verified petition to detain pursuant to 725 ILCS 5/110-6.1 (West 2024). After a detention hearing, defendant was ordered detained. He filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2), which was also denied. In *People v. Glover*, 2024 IL App (2d) 240374-U (hereinafter, "*Glover* II"), this court vacated the denial of pretrial release and remanded the matter back to the trial court with directions to promptly set a new detention hearing and conduct further proceedings consistent with our order.

¶ 6     On October 29, 2024, the matter proceeded to detention hearing. Both parties incorporated their arguments from the prior detention hearing. The State proffered four exhibits into evidence: (1) the transcript from defendant's original trial; (2) the police synopsis from an incident occurring on March 15, 2017, in Round Lake Beach; (3) the order of protection in case no. 19-OP-1586; and (4) the police synopsis from an incident occurring on November 26, 2020, in Round Lake Beach. Defendant objected to proffered exhibits 1, 2, and 4, on the basis of hearsay. All exhibits were admitted over defendant's objection. Defendant proffered one exhibit into evidence, a statement from Brittany Fears, defendant's sister. It was admitted without objection from the State.

¶ 7     The relevant information from defendant's original trial is as follows. On January 3, 2021, defendant was told by a friend that his car, which had been stolen a few days prior, was seen near Volo, Illinois. Defendant traveled to the location where his car had been seen. While there,

defendant observed his stolen car and began following the car. The stolen car either stalled or ran out of gas and came to a stop while defendant was chasing the car. At that point, defendant stopped behind his stolen car and attempted to prevent the two occupants of the stolen car from running away. The defendant was armed with his girlfriend's gun. The defendant fired multiple shots, striking both of them. After a trial, defendant was acquitted of the shooting against Jonathan Awad. He was also acquitted of the first-degree murder of Anthony Awad. He was found guilty of aggravated battery with a firearm and second-degree murder of Anthony Awad.

¶ 8    The March 15, 2017, police synopsis indicated that defendant had purchased a stereo from Trader John's on March 1, 2017. He returned to the store on March 15, complaining that the stereo did not work. John Chapman, the owner of Trader John's, contacted the manufacturer of the stereo, who offered to fix or replace it. John relayed this information to defendant, who grew more irate. He stormed out of the store claiming that "he would be back with his posse tomorrow." John took this as a threat and called the police. He did not sign a criminal complaint and did not want officers to contact defendant. He said he would contact the police again if there was further interaction with defendant.

¶ 9    The verified petition for order of protection in case no. 19-OP-1586 indicated that on July 30, 2019, defendant had Brittany Fears, his sister, and their mother, exit Brittany's car and enter his apartment to talk. Once inside, defendant began speaking to their mother in a "very demanding tone." Brittany exited the apartment to answer a call. Defendant followed her outside a little bit later and began yelling at her, calling her names related to her career as a police officer and telling her he would gladly "beat her ass" if she "put her gun and her badge to the side." Defendant eventually called the police. Once on the scene, officers interviewed Brittany, defendant, and their mother. Brittany and their mother left the scene. Defendant then texted their mother telling her to

stay away from him and his kids. Brittany then filed the petition as this was the third or fourth verbal altercation between her and defendant in the last year. Additionally, he had gotten physical with her during an argument about six months ago. An order of protection was entered on August 14, 2019.

¶ 10 The November 26, 2020, police synopsis indicated that on November 26, 2020, officers were dispatched to 968 N. Fairfield Road, Round Lake Beach, for a well-being check. Shelbie Porter had called in for a well-being check on her daughter, as she believed her daughter's father, defendant, was intoxicated. He had also threatened her with a firearm approximately 30 minutes earlier. Upon arrival on scene, defendant refused to allow officers into the home, or to step outside to speak with them. He instead tried to slam the door in the officers' faces. One officer prevented him from doing so and attempted to place defendant into handcuffs. He resisted arrest but was ultimately subdued. At the station, he denied pointing a gun at Shelbie, but acknowledged they did get into an argument regarding a traffic citation Shelbie had received. Shelbie did not pursue domestic violence charges against defendant. He was issued a citation for resisting arrest.

¶ 11 That concluded the evidence put forward by the State. Defendant then called two witnesses. Lekeya Washington, defendant's wife, testified first. She testified that if released, defendant would be living with her. Additionally, although she did own one firearm, if defendant were released with the condition that he not possess a firearm, she would transfer ownership of the firearm to somebody who did not reside in the home.

¶ 12 Lonnie Glover, defendant's father, testified next. He testified that he would be willing to allow defendant to reside with him if he was released with conditions. Additionally, he did not own a firearm and has no plans of purchasing a firearm in the future. On cross-examination, he testified that he lived about a mile and a half from Lekeya Washington.

¶ 13    Defendant's Exhibit A, the statement from Brittany Fears, indicated that defendant was a good man. It also indicated that the July 2019 incident that resulted in order of protection no. 19-OP-1586, was a non-physical altercation. There was an argument that escalated and defendant wound up calling the police on Brittany. She "felt that [she] needed to protect [her] assets and careers [*sic*] so to eliminate police contact and save [her] civilian and military career, so [she] got an order of protection." She further stated that she and defendant have resolved those issues and both grown as individuals.

¶ 14    The State argued that defendant committed the offenses as charged and that he poses an unmitigable threat because he has shown time and time again an inability to control his anger, as evidenced by the 2017, 2019, and 2020 incidents. This inability to control his anger culminated in the instant offense, resulting in a death.

¶ 15    Defendant summarized his argument from the previous hearing: that the State failed to prove by clear and convincing evidence that he had committed the offense as charged, as evidenced by his acquittal of the first-degree murder charge and by the victim's current pending charges of possession of a stolen motor vehicle, armed violence, and unlawful use of a weapon by a felon. Additionally, the State failed to prove that defendant's pretrial release would pose an unmitigable threat. Defendant has no violent criminal history. No charges were ever brought regarding the 2017, 2019, and 2020 incidents. Specifically, regarding the 2019 order of protection, defendant's sister provided her statement indicating that they had resolved their issues and that defendant is a good man. Further, the facts of the instant case leave open the possibility for a self-defense affirmative defense.

¶ 16    The trial court ordered defendant detained:

"I have listened to the arguments today advanced by the State in favor of detention and by the defense in favor of pretrial release mindful of the fact that there are, essentially, three prongs to this hearing which I must make clear that I'm considering and ruling upon.

\* \* \*

Certainly with respect to the first prong, the State has clearly demonstrated, and the record clearly establishes that the defendant has been charged with a qualifying offense; and I do so find that with respect to the first prong.

Second. With respect to the decision about whether the defendant has any type of dangerousness in his character that would pose a present threat to a person or persons in the community.

As the State indicated and defense alluded to in their filings, I am required to look to a number of factors; whether the nature and the circumstances of the offense charged include whether an offense is one of violence involving a weapon or a sex offense; the history and characteristics of the defendant; the identity of any person to whom the defendant is believed to pose a threat and the nature of that threat; statements made by or attributed to the defendant, together with the circumstances surrounding the statements; the age and physical condition of the defendant; the age and condition of the victim or complaining witness; and whether or not the defendant is known to possess or have access to weapons; and finally, whether at the time of the current offense or any other offense the

defendant was on probation, parole, or supervised release from custody; any other factors, including those listed in the code.

With respect to the third prong; which I consider together with the second prong because they are overlapping and they do involve consideration of some of the same type of evidence; in considering whether there is any mitigation or any type of pretrial release that could – or, conditions that could mitigate anything which would make -- or, insure that the defendant was compliant.

I am also mindful that I have to consider the nature and circumstances of the offense, the weight of the evidence against the defendant, the history of the characteristics of the defendant, the nature and seriousness of the real and present threat to the safety of any person in the community, and the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process.

In reviewing these factors with respect to the defendant in this case, I respectfully disagree with the defense contention that this was the result of a sudden intense action that was provoked by the Awads, who were in each instance charged with being the victims in these cases.

And it is true that the offenses that was alleged to have been occurred was not isolated in an *** instant; it was the result of a multiday endeavor on behalf of Mr. Glover in an effort to retrieve what he believed was a wrongfully taken possession of his. And it can only be described as *** a hunt by Mr. Glover to reacquire property that was wrongfully taken from him.

And the wrong that the defendant was addressing was a property crime. And in my estimation, there is no justification for a private citizen to use deadly force or potentially deadly force in the manner that was alleged to have been used here.

\* \* \*

And notwithstanding the fact that he was not entitled to possess a firearm, he still was able to secure a firearm and to use it in a manner which clearly demonstrates his potential for violence in situations that he deems appropriate.

\*\*\*

A word about the defense's argument that there exists a possibility that he could live with a woman with whom he was in relationship at the time of this incident. She testified credibly, clearly that she would get rid of her firearm. I don't find that that provides any reasonable assurance that Mr. Glover could not otherwise obtain a firearm if he required one for whatever purpose.

Also his father testifying; who I also believed testified clearly and credibly, it has nothing but the best intentions at heart; provides no sufficient assurance for me that he could in any way be a sufficient monitor, if that was even to be suggested for Mr. Glover. That certainly would not be an appropriate living arrangement given the nature of the offence [*sic*] charged and the probability and possibility of trial in the new [*sic*] future.

Also defense says that electronic home monitoring could be utilized to insure that Mr. Glover's whereabouts are made known. That's not how EHM works. EHM is not an adequate safeguard to protect the community. The

defendant, therefore, fails in his argument that EHM would provide adequate monitoring.

The way EHM works, in point of fact, is if a violation is detected, it's brought to people's attention sometime thereafter; certainly not in all cases immediately; especially if it occurs at night or weekends when they're not monitoring 24 hours a day.

It's, therefore, my considered opinion, after taking into account all of the arguments, all of the evidence that was offered here today; including, but not limited to the State's exhibits, the defense exhibit; it's an explanation of an incident with Mr. Glover; that the State has met their burden and has demonstrated to me clearly and convincingly that it is an appropriate to continue to detain Mr. Glover pending trial. And that will be the order."

¶ 17    On November 26, 2024, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2). Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In it, he argued that the State failed to prove each of the three requirements for pretrial detention. The motion proceeded to hearing on December 16, 2024. The trial court denied the motion and this timely appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant argued in his motion for relief that (1) the State failed to prove by clear and convincing evidence that he had committed a qualifying offense because his remaining charges are justified by the affirmative defense of self-defense; (2) the State failed to prove that defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community; and (3) the State failed to prove that no condition or combination of conditions would mitigate the threat defendant poses to the victim and the community.

¶ 20    In his appellate memorandum, defendant introduces a new argument: that it was error to allow the State to introduce new evidence on remand as this exceeded the scope of the mandate. He acknowledges that this issue was not raised before the trial court but urges us to review under plain error or ineffective assistance of counsel. The State does not address this argument at all in its memorandum.

¶ 21    We first address defendant's new argument. As noted above, defendant requests we review this argument under either plain error or ineffective assistance of counsel. Regarding plain error— this doctrine is an exception to the *forfeiture* rule, not the *waiver* rule. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (explaining that the plain-error doctrine bypasses normal *forfeiture* principles); *People v. Romero*, 2025 IL App (2d) 240581-U, ¶ 24 ("It therefore follows that plain error would not apply to claims of error that were *waived*."). As defendant here appealed under Illinois Supreme Court Rule 604(h), he has waived rather than forfeited the issue by not raising it in his motion for relief, and plain-error review is inapplicable. See Ill. Sup. Ct. R. 604(h)(2) (West 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, *shall be deemed waived*." (Emphasis added.)).

¶ 22    Regarding ineffective assistance of counsel—defendant has not meaningfully fleshed this out in his appellate memorandum. In order to successfully prove ineffective assistance of counsel, a defendant must show both that (1) defense counsel's assistance was objectively unreasonable under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant has shown neither. Rather, he alleges that counsel's failure to preserve an issue constitutes ineffective assistance of counsel if the issue has obvious merit. He does not explain how this particular issue has obvious merit, such that counsel's

failure to preserve the issue renders his assistance objectively unreasonable. Nor does he explain how the result of the proceeding would have been different, but for counsel's failure to preserve the issue. "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive argument presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation][.]" *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). As defendant did not sufficiently support his ineffective assistance of counsel claim, he has forfeited it.

¶ 23    Turning now to the remainder of defendant's arguments. Where live witness testimony is presented at a pretrial detention hearing, as is the case here, a trial court's ultimate detention decision, in addition to any underlying factual findings, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence.[1] *People v. Morgan*, 2025 IL 130626, ¶ 38. A decision is against the manifest weight of the evidence when the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 56.

¶ 24    Defendant argues that the State failed to prove that he had committed a qualifying offense because his remaining charges are justified by the affirmative defense of self-defense and because

---

[1] We note that in the unpublished case, *People v. Ballard*, 2025 IL App (4th) 241524-U, the Fourth District reviewed under the manifest weight of the evidence standard, despite the trial court being presented with defendant's live testimony. Its rationale was that the record showed the trial court's decision was largely based on the State's proffered evidence and the trial court made no explicit findings based on defendant's testimony. *Ballard*, 2025 IL App (4th) 241524-U, ¶ 24. Here, the court made explicit findings based on the testimony of defendant's wife and father. Therefore, the instant case is distinguishable.

the State's primary witness, Jonathan Awad, has been charged with several felonies, which diminishes his credibility.

¶ 25    In order to be denied pretrial release, the State must prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense. 725 ILCS 5/110-6.1(e)(1) (West 2024). Clear and convincing evidence is defined as "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.*, 2021 IL App (1st) 102492-B, ¶ 12. It is more than a preponderance of the evidence but less than is required to convict an individual of a criminal offense. *Id.*

¶ 26    Here, the State met its burden. At this stage in the proceeding, the State need not disprove an affirmative defense. *People v. Smith*, 2024 IL App (2d) 240168, ¶ 31; *People v. Clark*, 2024 IL App (1st) 241898-U, ¶ 31. It must only disprove an affirmative defense beyond a reasonable doubt if it is raised at trial. *Id.* Further, inherent in a self-defense affirmative defense is an admission that the force occurred. It's a justification for that force, not a denial of its occurrence. In the instant case, the State more than met its burden. It provided the entire transcript from *Glover* I, which established that defendant pursued Anthony and Jonathan Awad. When the car ran out of gas and came to a stop, there was a "scuffle" that resulted in defendant's firearm being fired, causing injury to Jonathan Awad and death to Anthony Awad. There is a dispute as to who initially had the firearm. However, this does not change the bare facts of the incident, as outlined above. At this stage, that is sufficient to prove by clear and convincing evidence that the proof is evident or the presumption great that he had committed a qualifying offense.

¶ 27    We also disagree with defendant's contention that the State's primary witness, Jonathan Awad, has been charged with several felonies, which diminishes his credibility, and therefore

means the State cannot prove by clear and convincing evidence that the proof is evident or the presumption great that he had committed a qualifying offense. Again, at this stage, the State need not prove defendant guilty beyond a reasonable doubt. While defendant is free to explore Jonathan Awad's credibility issues at trial, those issues do not change the bare facts of the incident, as outlined above. Accordingly, the State met its burden and we find that the trial court did not err in finding that the proof is evident or the presumption great that defendant had committed a qualifying offense.

¶ 28    Next, defendant argues that the State failed to prove that his pretrial release poses an unmitigable threat because the 2017, 2019, and 2020 incidents proffered by the State did not result in convictions; and evidence of the 2019 incident was countered by his sister's statement offered as Defendant's Exhibit A. We disagree.

¶ 29    In determining dangerousness, the trial court may consider the following factors: (1) the nature and circumstances of the offense or offenses charged; (2) the history and characteristic of the defendant; (3) the identity of any person or persons to whose safety the defendant is believed to pose a threat; (4) any statements made by defendant, together with the circumstances surrounding them; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapon or weapons; (8) whether, at the time of the current offense, the defendant was on probation; and (9) any other factors deemed by the court to have a reasonable bearing upon defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

¶ 30    In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider the following: (1) the nature and

circumstances of the offense charged; (2) the weight of the evidence against the evidence; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by defendant's release; (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). No one factor is dispositive. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 12.

¶ 31    Here, the trial court's finding that defendant poses a real and present threat to the community was not against the manifest weight of the evidence. Certainly, the nature and circumstances of the offense weigh in favor of dangerousness. Defendant engaged in a car chase that ended in violence. Defendant attempts to minimize these facts by pointing to the existence of a potential self-defense affirmative defense. As discussed above, this is not persuasive at this point in the proceeding. See *supra* ¶ 26. Defendant also argues that he has the right to search for and retrieve his own stolen property, and therefore, the nature of the crime cannot contribute to a dangerousness finding. However, defendant's actions well exceeded this scope. He did not merely search for and retrieve his stolen car. He chased down the Awads and then engaged in violence in an attempt to retrieve his property. Accordingly, the nature and circumstances of the offense weigh in favor of dangerousness.

¶ 32    Defendant's history and characteristics also weigh in favor of dangerousness. Defendant argues that because the 2017, 2019, and 2020 incidents did not result in convictions, they do not carry much weight. Additionally, he argues that evidence of the 2019 incident was countered by his sister's statement offered as Defendant's Exhibit A. We disagree. At this stage in the proceeding, the State may present evidence by way of proffer based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2024). The police synopses presented certainly constitute reliable

information. This court has time and time again found that police report synopses are sufficient to show that the proof is evident or the presumption great that the defendant committed the offenses as charged. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. They are also sufficient to show defendant has a history of anger and escalating violence. We disagree with defendant's contention that just because no convictions resulted from these incidents, it follows that they have no evidentiary value at a pretrial detention hearing.

¶ 33    Even if we were to disregard the 2019 incident, based on Brittany Fear's statement indicating she and defendant have resolved their issues, the 2017 and 2020 incident do show defendant has an inability to control his temper that has steadily escalated over the years. It also shows that defendant is indiscriminate in who he unleashes his temper on, thus posing a danger to the community at large, should he be released. For all those reasons, the trial court's finding of dangerousness was not against the manifest weight of the evidence.

¶ 34    We also find that the trial court's finding that no conditions or combination of conditions can mitigate the threat posed by defendant was not against the manifest weight of the evidence. Again, the nature and circumstances of the offense charged and the history and characteristics of defendant both weigh in favor of detention, as outlined above. See *supra* ¶ 31-33.

¶ 35    Defendant points to *People v. Atterberry*, 2023 IL App (4th) 231028, to support his contention that the trial court improperly ruled out pretrial release based on the general perception that conditions of release are loosely monitored. However, we disagree with this framing of the trial court's ruling. The trial court ruled out EHM and at-home monitoring by defendant's wife or father because of the specific and articulable facts of the instant case. Defendant's history of escalating anger and violence make it possible that even the briefest of interactions with the community may morph into something dangerous. The State's burden of proof does not require

the trial court to specifically address every conceivable condition or combination of conditions and explain why each condition does not apply. *People v. Mikolaitis*, 2024 IL 130693, ¶ 20. The trial court's address of both EHM and at-home monitoring are sufficient to show that its finding that no conditions or combination of conditions would mitigate the threat posed by defendant was not against the manifest weight of the evidence.

¶ 36    In sum, the trial court's detention of defendant, and its underlying factual findings, were not unreasonable, arbitrary, or not based on the evidence. Accordingly, they were not against the manifest weight of the evidence, and we affirm.

¶ 37                                 III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the trial court of Lake County.

¶ 39    Affirmed.