2025 IL App (2d) 24-0581-U
No. 2-24-0581
Order filed February 3, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1209 |
| JORGE R. ROMERO, | ) ) | Honorable Donald Tegeler, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  (1) In the motion for relief, defendant failed to include the argument that the trial court improperly held his pretrial detention hearing 24 hours after the filing of the petition to detain, in violation of 725 ILCS 5/6.1(c)(2), and accordingly has waived the argument. (2) Defendant failed to show he was prejudiced by counsel's failure to include the argument in the motion for relief. (3) The trial court's determination that no condition or combination of conditions would mitigate the threat posed by defendant, where defendant had criminal history involving the same victim and had previously violated court orders. Affirmed.

¶ 2   Defendant-Appellant, Jorge Romero, appeals from the June 21, 2024, denial of his motion for relief, seeking relief from the trial court's June 9, 2024, order denying him pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024). For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4      On June 8, 2024, defendant was charged via complaint with one count of home invasion causing injury (720 ILCS 5/19-6(a)(2) (West 2024)), a Class X felony; one count of robbery (720 ILCS 5/18-1(a) (West 2024)), a Class 2 felony; four counts of domestic battery (720 ILCS 5/12-3.2(a)(1)-(2) (West 2024)), a Class 4 felony; and one count of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2024)), a Class A misdemeanor. The same day, the State filed a verified petition to deny pretrial release, pursuant to 725 ILCS 5/110-6.1 (West 2024), alleging that defendant was charged with a detainable offense, his pretrial release poses a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions would mitigate that threat.

¶ 5      The matter proceeded to probable cause hearing (see *Gerstein v. Pugh*, 420 U.S. 103; *County of Riverside v. McLaughlin*, 500 U.S. 44), but was continued to the following day, June 9, 2024, for detention hearing. The proceedings on June 8, 2024, were not properly recorded; the transcript from that date seems disjointed at times and shows eight instances of "audio distortion." The transcript does show that the trial court asked the parties if the matter was to be held over for detention hearing, to which the State responded in the affirmative. Defense counsel did not object to this.

¶ 6      At the detention hearing on June 9, 2024, the State tendered the defendant's public safety assessment report, the complaint and sworn synopsis from the instant case, and the complaint and sworn synopsis from 24-DV-431, another case defendant had been charged with.

¶ 7      The public safety assessment report showed that defendant had three or more prior violent felonies, had a pending charge at the time of the offense, and had a prior failure to appear older

than two years. Defendant was rated six out of six on the new criminal activity scale and rated four out of six on the failure to appear scale.

¶ 8    The sworn synopsis from the instant case reads as follows. On June 7, 2024, Carpentersville police officers were dispatched to 60 Elm Avenue, Unit C, in response to a possible home invasion. Upon arrival, they observed blood on the front door frame and made contact with the victim, E.T. She relayed that defendant, her ex-boyfriend, had been repeatedly calling her throughout the day. That evening, she awoke to the sound of someone attempting to break into the rear of the residence. E.T. grabbed her cell phone and entered her children's bedroom. She then called defendant's mother to advise that she believed defendant was at her home, due to the fact he had incessantly been calling her earlier in the day. E.T. then heard someone break in and enter the home. She then called 911. The individual who had broken into her home then kicked down the door to her children's bedroom, damaging the door and frame. At this point, E.T. could identify the individual as defendant. Defendant then entered the bedroom and began striking E.T. about her face and body, causing a bump to form on her forehead. During the altercation, defendant ripped E.T.'s cell phone from her hand as she was on the line with 911. Defendant then left the home from the rear entrance, taking E.T.'s cell phone with him. E.T. also told officers that she believed defendant was under the influence of alcohol, as she could smell the odor of alcohol on him.

¶ 9    Officers then canvassed the area to locate E.T.'s cell phone or the defendant. Approximately an hour and a half after their initial contact with E.T., officers located defendant near 102 N. Western Avenue, where defendant was hiding in a wooded area behind a garage. As defendant had several lacerations on his right wrist, he was transported to Sherman Hospital. After being discharged from the hospital, defendant was taken into custody.

¶ 10    The sworn synopsis from 24-DV-431 relayed as follows. On February 21, 2024, Carpentersville police officers were dispatched to 60 Elm Avenue, Unit C, in response to a domestic battery in progress. E.T. was also the victim in this incident. Upon arrival on scene, officers observed defendant in front of E.T.'s door, appearing highly intoxicated and disturbing the peace. Officers spoke with E.T. who relayed that defendant had come home intoxicated and started arguing with her, apparently jealous. Defendant became violent, struck her in the face, and split open her lip. E.T. also said that defendant had knocked her to the ground during the altercation and had taken away her cell phone as she was attempting to call 911. Officers observed injuries consistent with E.T.'s story upon her person. Defendant was taken into custody.

¶ 11    At the detention hearing, the State argued that the sworn synopsis establishes that defendant committed the offenses as charged and show that his pretrial release would pose a real and present threat to E.T., as defendant had battered her before. Additionally, children were present while defendant committed the offenses and defendant tried to rip E.T.'s phone away from her as she was calling 911, which further show that he is a real and present threat.

¶ 12    At the time of the instant offense, defendant was on probation for felony DUI. A condition of his probation was that he refrain from consuming alcohol, which he failed to do. Defendant had also been previously ordered to have no abusive contact with E.T., which he again failed to do. This shows that defendant is unable to comply with court orders, and thus no condition or combination of conditions would mitigate the threat he posed to E.T. The State briefly discuss no-contact orders, electronic home monitoring (EHM), and GPS as potential conditions, but write them off, as defendant's history shows that he is willing to violate court orders.

¶ 13    Defense counsel proffered that defendant works a full-time job at Amazon, and has two children, ages 3 and 4. If released, he would reside with his mother in Elgin. Defense counsel then

argued that the State had not met its burden, as the synopses were insufficient. No photos of any damages or injuries, no testimony from the victim or defendant's mother, and no admission of guilt by defendant were presented to the court. Further, the synopses themselves lack corroborating information to render them reliable. Defense counsel also argued that the fact that E.T. called defendant's mother before calling 911 impacted her credibility.

¶ 14    In terms of defendant being a real and present threat, defense counsel argued that defendant has significant ties to the community and has a full-time job. If defendant was found to be a real and present threat, defense counsel argued that GPS monitoring and a no-contact order would sufficiently mitigate that threat.

¶ 15    The trial court granted the State's petition. In so ruling, it stated:

> "The Court has considered the factors in determining the dangerousness set forth in the statute. Those factors consider the nature and circumstances of the charged offenses; the history and characteristics of the defendant including any prior criminal history indicative of violent, abusive, or assaultive behavior; the identity of the person [to] whom the defendant poses a threat; the nature of the threat; any statements made by or attributed to the defendant; age and physical condition of the defendant; whether at the time of the current offense -- whether or not at the time of the current offense of any other offense or arrest defendant was on probation, parole, aftercare, release or mandatory supervised release; and any other factors as listed in Section 110-5.
>
> Based upon the verified petition, the proffered evidence and testimony heard by this Court, and having considered the factors in determining the dangerousness, the Court finds as follows: The State has proven by clear and convincing evidence that

the proof is evident and the presumption great that the defendant has committed the charged offenses.

The evidence consists of the following based on what was tendered by the State and the review of the sworn synopsis and the statements made by the complaining witness in this case [E.T.]: That the defendant had broken into their home; he had not lived there; he had no rights to enter that home; he entered that home while she and her children were present; he entered that home and battered the witness causing her injury, again, while the children were present.

The witness had attempted to or had contacted the defendant's mother which was the first phone call she made. And as the State argued, could be perceived as trying to deescalate the situation. But while the complaining witness was on the phone with the police, the defendant took that phone away from her.

So the State has proven by clear and convincing evidence the charges that the defendant has been charged with.

Now, the next step is to determine whether or not they've proven by clear and convincing evidence that the defendant poses a risk to certain individuals or a risk to the community at large. They have met that burden as well.

This defendant -- and the Court took judicial notice of the domestic battery case the defendant, just one month prior to committing this new offense, that he was to have no abusive contact with the complaining witness in this case. Clearly he's violated that condition less than one month later.

So this defendant has displayed behavior consistent with him not being able to obey court orders, consist [*sic*] with him being a risk to not only the complaining

witness in this case but to others at large. And there's no conditions that can mitigate the real and present threat posed by the defendant. That there are no less restrictive conditions that would avoid the real and present threat by the defendant.

Therefore, the State has met its burden of proof under that standard."

A written order was entered that same day, summarizing these findings. Defendant was remanded into custody and the matter was continued to June 17, 2024, for status.

¶ 16    On June 10, 2024, defendant filed his motion for relief. In it, he argued that: (1) the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged; (2) the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety or any person or persons or the community based on the specific, articulable facts of the case; and (3) the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case. The matter went to hearing on defendant's motion for relief on June 21, 2024.

¶ 17    At the hearing, defense counsel argued that the trial court had erred in finding that no condition or combination of conditions would mitigate the threat posed by defendant. Specifically, EHM or GPS would mitigate the threat. Counsel reiterated that should defendant be released he would be staying in Elgin with his mother. Counsel argued that because defendant would be living at a different residence than the victim and has full-time employment, that EHM or GPS would be sufficient conditions.

¶ 18     The State responded, saying that defendant had already violated the court order in 24-DV-431 by having abusive contact with E.T. Accordingly, he has shown that he cannot comply with court orders and no condition would mitigate the threat posed by defendant.

¶ 19     In denying defendant's motion for relief, the trial court stated:

> "First of all, in relation to Judge Campbell's previous decision, I agree that there is probable cause. I also agree that there is clear and convincing evidence that this gentleman most likely committed this offense. I also find that he is a danger to Ms. Torres, if nobody else, in relation to this case based upon the facts that I have read and so the Court is aware.
>
> The sworn sinopises [*sic*] states as follows: That the officer met [E.T.] near the front door of the residence where he made contact with her. When he entered the residence, he observed there to be blood on the front entryway of the front door interior door frame. Torres advised in summary the following events occurred:
>
> She had been receiving continuous phone calls from her ex-husband Jorge Romero throughout the day. Torres said that she and her children, AS and MS, were asleep in bed. By the way, this happened at 10:04 on June 8th, 10:04 p.m. on June 8th, 2024.
>
> While asleep, Torres heard a subject attempting to break into the rear of the residence. Torres grabbed her cell phone and went into the children's bedroom. In the children's bedroom, she called Romero's mother, Maria Romero, to notify her that she believed Romero was at her residence due to Romero's repeated phone calls throughout the day.

I would note that those repeated phone calls are probably in violation of the offense in 24 DC 431 based upon Judge Campbell's notes and knowing what the normal pleas are in those cases.

She then heard the subject break in, and when she believed the subject entered the residence, Torres then called 9-1-1 to report the break-in. The male kicked the children's bedroom door in causing damage to the door frame and door. She then identified the male offender as Romero.

Romero entered the bedroom and began striking Torres about her face and body causing a lump of approximately one-half of inch in diameter to her forehead. During the physical altercation, Romero ripped Torres' cell phone from her hand while she was on the line with 9-1-1. Romero then fled the scene out the rear door taking Torres' cell phone with him.

She stated she believed Romero was intoxicated due to an odor of alcohol coming from him. Torres described Romero as approximately five-seven tall, wearing a black t-shirt.

Going further, they then find [Romero] -- oh, she said he does not live there. He does not have property there.

They canvass the neighborhood. They find [Romero] hiding in a wooded area behind a garage. He had small lacerations to his right wrist. Check of the criminal history showed he had a prior conviction for domestic battery in Kane County 24 DV 431. Disposition date 5/23/24.

According to Judge Campbell's notes in that there was an order not to have any abusive contact with the complaining witness in this case, [E.T.], in the 24 DV

431, GPS and electronic home monitoring are not going to prevent this gentleman from breaking in houses belonging to [E.T.]. They just aren't. I don't find that that is a suitable restriction in this case. Actually, 24 DV 431 also ordered it appears that defendant to have no contact with [E.T.] which obviously, based upon these facts, it appears that he did. The motion for relief is going to be denied."

¶ 20    Defendant filed a notice of appeal on September 26, 2024. Under Illinois Supreme Court Rule 604(h)(8), our disposition was to be filed 100 days from that date, or January 6, 2025. Ill. Sup. Ct. R. 604(h)(8) eff. Apr. 15, 2024. However, as two extensions of time were granted in this matter and appellee's memorandum was not filed until January 6, 2025, this court has good cause in filing our disposition beyond the 100 days after the filing of the notice of appeal.

¶ 21                                    II. ANALYSIS

¶ 22    In his motion for relief, defendant argued that: (1) the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged; (2) the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety or any person or persons or the community based on the specific, articulable facts of the case; and (3) the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case. However, in his appellate memorandum, defendant argues that: (1) the trial court erred in detaining him where it failed to hold an immediate hearing on the State's petition to deny pretrial release, in violation of 725 ILCS 5/6.1(c)(2); and (2) the trial court erred in detaining him where the State failed to prove by clear and convincing evidence that no combination of conditions could mitigate the threat posed by his release.

¶ 23    Defendant argues for the first time in his memorandum that the one-day delay in holding his detention hearing in violation of 725 ILCS 5/6.1(c)(2) should automatically render his detention improper and result in his automatic pretrial release. He acknowledges that this is the first time this argument has been raised but urges this court to consider it under second-prong plain-error review, as the trial court allegedly misapplied the law resulting in his detention, affecting his fundamental right to liberty.

"[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565.

¶ 24    Importantly, plain error is an exception to the *forfeiture* rule. *Piatkowski*, 225 Ill. 2d at 564. It therefore follows that plain error would not apply to claims of error that were *waived*. Here, defendant appeals under Illinois Supreme Court Rule 604(h). Subsection (2) reads in relevant portion as follows: "Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, *shall be deemed waived*." (Emphasis added.) Ill. Sup. Ct. R. 604(h)(2) (West 2024).  Accordingly, defendant has waived the error on appeal, not forfeited it, and plain error review is inappropriate.

¶ 25    This issue was discussed in *People v. Nettles*, 2024 IL App (4th) 240962, a Fourth District case. Although not binding on this court, we find its rationale to be sound. In *Nettles*, the defendant argued in his appellate memorandum that plain error review should apply to allow review of his

argument that conditions existed that would mitigate the threat he posed. This argument was not raised in a motion for relief pursuant to Rule 604(h)(2). The *Nettles* court noted the difference between waiver and forfeiture: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of the right, waiver is the 'intentional relinquishment or abandonment of a known right." *People v. Nettles*, 2024 IL App (4th) 240962, ¶ 29 (quoting *United States v. Olano*, 507 U.S. 725, 733). "Such a distinction is important because if [a] defendant has waived the issue, we need not review his claim for plain error." *Id.* (quoting *People v. Scott*, 2015 IL App (4th) 130222, ¶ 21).

¶ 26    The court then pointed to the language of Rule 604(h)(2), which states that "any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, *shall be deemed waived*." (emphasis added) Ill. Sup. Ct. R. 604(h)(2) (West 2024).  It reasoned that the Supreme Court used the word "waived" intentionally, and there was no reason to conclude that the court did not mean what it said. *Nettles*, 2024 IL App (4th) 240962, ¶ 30, 32. We agree, and hold that plain error review is inappropriate, where defendant has waived the issue by not including it in his motion for relief.

¶ 27    Waiver aside, as the *Nettles* court also noted, undertaking plain-error review is discretionary. See Ill. S. Ct. R. 615 (eff. Jan. 1, 1967). We do not find the facts of this particular case to warrant plain-error review. The transcript is replete with "audio distortions" indicating that the recording system likely did not completely accurately record the proceedings. Defendant could have supplemented the record with a bystander's report to fill in the gaps in the transcript, but he chose not to. Additionally, defense counsel did not object when the trial court asked if the matter was being held over for detention hearing. Finally, the matter was continued a mere 24 hours from his initial appearance. Under these facts, we decline to undergo plain-error review.

¶ 28     Alternatively, defendant argues that the failure of counsel to include the issue in the motion for relief constitutes ineffective assistance of counsel. We again disagree. Under *Strickland*, in order to show ineffective assistance of counsel, a defendant must show (1) that defense counsel's assistance was objectively unreasonable under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If defendant fails to show either prong, the ineffective assistance of counsel claim will fail.

¶ 29     Here, defendant cannot show prejudice, so his ineffective assistance of counsel claim fails. See *People v. Johnson*, 2021 IL 126291, ¶ 53 ("[I]f it is easier to dispose of an ineffective-assistance of counsel claim on the ground that it lacks a showing of sufficient prejudice, a court may proceed directly to *Strickland*'s prejudice prong and need not determine whether counsel's performance was deficient."). A defendant is prejudiced by counsel's deficient performance if there is a reasonable probability that the result would have been different but for counsel's deficient performance. *People v. Houston*, 226 Ill.2d 135, 144 (2007). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *People v. Petrie*, 2021 IL App (2d) 190213, ¶ 80. Defendant claims that counsel's failure to include in the motion for relief the argument regarding the one-day delay between the filing of the petition to detain and the detention hearing resulted in prejudice. However, we fail to see how holding the hearing 24 hours earlier would have changed the outcome. Nor has defendant provided any argument demonstrating how the outcome would have changed had the hearing been held earlier.

¶ 30     Defendant cites to *Lafler v. Cooper*, 566 U.S. 156, to support the contention that any amount of additional jail time has Sixth Amendment significance that can result in *Strickland* prejudice. *Lafler v. Cooper*, 566 U.S. at 165. However, *Lafler* discusses additional jail time in the

context of a sentencing hearing, not a pretrial detention hearing. Pretrial detention is revisited at every single court date (see 725 ILCS 5/110-6.1(i-5) (West 2024)), whereas a sentencing determination is much more permanent. Therefore, *Lafler* is distinguishable, and we find no ineffective assistance of counsel.

¶ 31    Defendant's final argument is that the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case. Defendant argues more specifically that the State did not prove that the combination of a SCRAM bracelet, alcohol abuse treatment, GPS or electronic monitoring, and a no-contact order would fail to mitigate the threat posed by defendant. We disagree.

¶ 32    A circuit court's decision to detain a defendant is reviewed using the now familiar two-part standard of review promulgated by *People v. Trottier*. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. The manifest-weight-of-the-evidence standard applies to the circuit court's factual determinations. *Id.* A finding is contrary to the manifest weight of the evidence only if an opposite conclusion to the circuit court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 33    Here, the trial court did not abuse its discretion in finding that no condition or combination of conditions would mitigate the threat posed by defendant. Defendant argues that because the State did not prove that the specific combination of SCRAM, alcohol abuse treatment, GPS monitoring, and a no-contact would not mitigate the threat posed, that the trial court therefore erred

in detaining him. However, it is well established that "[t]he State's burden does not obligate it to specifically address the efficacy of every conceivable condition or combination of conditions. Rather, it is the trial court that must ultimately consider all it has heard and, if ordering detention, make written findings explaining 'why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community.'" *People v. Johnson*, 2024 IL App (3d) 240180, ¶ 14. The trial court did just that. It noted defendant's inability to comply with court orders and his repeated abusive contact with the victim in the instant case in determining that no conditions would mitigate the threat he posed. This is sufficient, and accordingly, the trial court did not abuse its discretion in finding that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 34                                    III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 36    Affirmed.