NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250916-U

NO. 4-25-0916

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| NATHAN A. COURTLAND, | ) | No. 25CF178 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court affirmed, finding the trial court did not err in denying
defendant pretrial release.

¶ 2     Defendant, Nathan A. Courtland, appeals the trial court's order denying pretrial

release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/art. 110 (West 2024)). On appeal, defendant argues the court erred in finding the State proved

by clear and convincing evidence (1) he committed a detainable offense and (2) no condition or

combination of conditions would mitigate the threat he posed to the community. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On July 14, 2025, the State charged defendant with two counts of child

pornography, Class X felonies (720 ILCS 5/11-20.1(a)(2), (c) (West 2024)), alleging he, with

knowledge of the nature of the content thereof, filmed, or videotaped, or otherwise depicted or

portrayed by means of any similar visual medium any child who he knew or reasonably should have known to be under the age of 13, depicted or portrayed in any pose, posture, or setting involving lewd exhibition of the unclothed body of the minor. On the same day, the State petitioned to deny defendant pretrial release pursuant to section 110-6.1(a)(5) of the Code (725 ILCS 5/110-6.1(a)(5) (West 2024)), alleging the proof was evident and presumption great he committed a detainable offense, his pretrial release posed a real and present threat to the safety of others, and no conditions could mitigate that threat.

¶ 5    Later that day, defendant appeared before the trial court for an initial appearance and detention hearing. The State first offered its bases for probable cause, noting Detective Kevin Meints of the Pontiac Police Department went to defendant's residence at 75 Redwood Manor on July 11, 2025, as part of another investigation. A child answered the door and identified herself as J.L. She confirmed defendant was home, and he eventually came to the door. During the conversation with Meints, defendant consented to a manual search of his phone. Meints found two videos on the phone. The first video was dated December 23, 2024, and was approximately 3 minutes and 47 seconds long. It depicted a minor, J.L, the same person who answered the door, exiting the shower, with her breasts and vagina exposed to the camera. J.L. toweled off, got dressed, and left the bathroom. The video appeared to have been taken with a hidden camera because the border of the video was obstructed. The second video was dated January 14, 2025, and showed J.L. in the bathroom with a towel around her body. This video also had an obstructed border. In the video J.L. removed the towel, exposing her breasts and vagina; she then got dressed and left the bathroom. The State confirmed J.L. was 11 years old. The court found probable cause that a criminal offense occurred.

¶ 6    Turning to the issue of pretrial detention, the State offered People's exhibit No. 1,

the Office of Statewide Pretrial Services (OSPS) proffer outline, which the trial court admitted without objection. The State then called Detective Meints. He confirmed he contacted defendant as part of a separate investigation involving the possible sexual abuse of a different minor, L.H. Meints testified he was investigating defendant's interactions with L.H. dating back several years, since L.H. was 13 years old. The investigation revealed defendant gave L.H. vapes and marijuana, sought to date her, asked her to send him pictures, and asked her to engage in sex acts with him. In his pursuit of L.H., defendant told her "age is just a number." Meints testified the revelations from L.H.'s case led him to suspect defendant communicated with other minors about sex acts.

¶ 7     As for the current charges, Meints confirmed J.L. was 11 years old. He further confirmed J.L. and defendant lived in the same residence. He testified J.L.'s father also lived in the residence, as well as four other children. Meints testified he conducted a manual search of defendant's phone, with his consent. He noted he found "concerning" pictures of another "juvenile female roughly between eight to ten years old." Meints testified he believed this girl was a neighbor who lived near defendant. He stated the pictures appeared to be screenshots taken from the child's mother's Facebook profile.

¶ 8     Meints testified he entered the trailer where defendant resided with J.L. and the others. J.L.'s father took Meints around the home, including the bathroom setting for the videos. Meints identified the bathroom as the one from the videos based off the shower curtain and a hole in the wall. Meints stated the bathroom was "attached to [defendant's] bedroom." Meints described the hole in the wall as "about the size of a soccer ball." To Meints, it appeared the hole "was a through, through one side, out the other." He testified he learned from J.L's father that the hole had recently been patched on the bathroom's side. He noted he located the two videos of

J.L. in the Microsoft OneDrive app on defendant's phone.

¶ 9          On cross-examination, Meints confirmed the hole in the wall between the bathroom and defendant's bedroom was large. He also noted L.H. was now 17 years old. The only other evidence the defense provided was a proffer that defendant would abide by any pretrial conditions the trial court deemed appropriate. Counsel informed the court that defendant had secured permission to live at a different residence, where there would be no children.

¶ 10         The State argued defendant committed detainable offenses and presented a threat to minors and the community at large. The State recounted the facts of this specific case: defendant surreptitiously filmed a nude 11-year-old girl. The State noted defendant was a suspect in other investigations involving multiple children in the community. It noted defendant was alleged to have been communicating with multiple minor females, seeking sexual relationships with them, telling one "he doesn't care about age, age is just a number." It finally recounted how defendant had taken screenshots of a young neighbor girl from her mother's social media account. The State contended no pretrial release conditions would mitigate the threat defendant posed, directing the trial court's attention to State's exhibit No. 1, which outlined OSPS's limitations. The State argued the limited times OSPS could meet with defendant in person or require him to check in via phone call or text "doesn't mitigate any of the other time that this defendant is out and about in the community communicating with other individuals." The State argued, "GPS monitoring would tell us where the defendant is at, not what he's doing or who he is communicating with." It went on to note an order preventing defendant from communicating with certain people or children would not mitigate the threat, as his communications could not be monitored. The State argued "OSPS has no ability for electronic surveillance whatsoever"; specifically, OSPS "has no real ability to monitor what a person is doing online; they have no

training in regards to monitoring that, phone extractions, anything of that nature." It acknowledged OSPS could manually search any device defendant provided them, but they could not be sure defendant would surrender all electronic devices or that he would not delete incriminating materials before taking the devices to OSPS. The State clarified OSPS does not "do home visits, because home visits are deemed too high risk for officer safety." The State concluded, "There is no meaningful way to mitigate the dangerousness that [defendant] poses to children, I would say in general, but especially to children in this community."

¶ 11      Defense counsel insisted defendant did not pose a real and present threat to any person or the community. Counsel noted defendant denied producing the video of J.L. or putting it on his phone. He maintained there can be no expectation of privacy in a bathroom with a 12-inch hole in the wall. In arguing there are conditions that can mitigate any perceived threat defendant poses to the community, counsel noted defendant had no criminal history and previously complied with a 2023 order of protection. Counsel suggested the trial court could impose several different conditions, like no contact orders or requiring him to stay in a residence with no children or preventing him from having electronic devices. Counsel noted defendant had a learning disability and would not be able to circumvent any conditions the court may impose or delete any incriminating information from a device. Counsel also noted defendant had multiple medical issues, including Tourette syndrome, a heart murmur, and speech issues. He confirmed defendant worked full-time and supported his six-year-old son. Counsel concluded that pretrial release conditions could alleviate any risk defendant potentially posed to the community.

¶ 12      The trial court granted the petition to deny pretrial release, finding the State proved by clear and convincing evidence defendant committed a detainable offense, posed a real and present threat to the safety of the community, and no release conditions could mitigate that

threat. The court asserted, "the probable cause statement here today, *** as well as the testimony from Detective Meints that he actually observed these videos that were on the defendant's phone" confirmed "the proof is evident and presumption great that the defendant has committed a detainable offense." The court explained the State proved defendant posed a threat to the community "based on the specific articulable facts of this case." When considering pretrial release conditions, the court noted it must conduct an individualized assessment and consider various factors. Concerning the nature and circumstances of the charged offense, the court observed, "This is a very serious offense, *** it's as serious as it gets, class X felony." The court observed the State's probable cause statement indicated a strong case against defendant. The court labeled this as "a very concerning case," noting defendant may have multiple victims spanning multiple cases. Since defendant's "crimes *** are committed in person, via electronic means, he's videotaping people," the court noted available release conditions "are largely based on self-reporting" and do "not assuage any concerns I have with this defendant complying with conditions of pretrial release." The court explained OSPS's inability to do home visits or monitor defendant's use of electronic devices provides it "no assurances that [defendant] would comply with" any imposed conditions, especially since defendant "exhibited deceptive practices or behaviors, secretly videotaping individuals." Ultimately, it concluded:

"My position is that the dangers here far outweigh any conditions that I could impose. We have a defendant who is preying upon the most vulnerable individuals of society; at a time when he's supposed to be protecting this individual, he's violating her. And he knows, and he knows her; that's even more concerning, he knows her. What is he going to do to somebody he

- 6 -

doesn't know or doesn't care about. All very concerning."

As for conditions, the court found: "And I do not believe that there are any conditions of pretrial release that could mitigate the very real and present threat to the safety of all these individuals." It continued:

"I think he's unlikely to comply with any or all pretrial release conditions that could be imposed in this case, and that's really based on the fact that largely it's self-reporting; that is a very big concern for this Court, why would he tell on himself[?] And, ultimately, I don't believe there are combinations of available pretrial release conditions that could adequately mitigate the very high risk that I see to, not only the named individuals, but also the community; I don't think that the community safety or individual safety, for that matter, can be meaningfully achieved with the available conditions of pretrial release."

¶ 13          On August 14, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), arguing less-restrictive conditions would avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. Defendant did not argue the issue he raised for the first time here—that the State failed to show he committed a detainable offense, specifically, that the videos were lewd. Following an April 23, 2025, hearing, the trial court denied the motion.

¶ 14          This appeal followed.

¶ 15                              II. ANALYSIS

¶ 16          On appeal, defendant argues the trial court erred in finding the State proved by

clear and convincing evidence the proof was evident or presumption great (1) he committed a detainable offense and (2) no less-restrictive conditions would mitigate the threat he posed. We disagree.

¶ 17          Under section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2024)), it is presumed all criminal defendants are entitled to pretrial release. The State may seek a defendant's pretrial detention if he is charged with a detainable offense as enumerated in the Code and, after a hearing, the trial court finds his release would present "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," or he "has a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(1), (8) (West 2024). The State bears the burden of proving "by clear and convincing evidence that any condition of [pretrial] release is necessary." 725 ILCS 5/110-2(b) (West 2024). When the parties present live witness testimony during a pretrial detention hearing, we review the trial court's ultimate detention decision, including any underlying factual findings supporting the decision, under the manifest-weight-of-the-evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. A decision "is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the [decision] itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted) *Morgan*, 2025 IL 130626, ¶ 21.

¶ 18          First, defendant argues the State did not prove by clear and convincing evidence the proof was evident or presumption great he committed a detainable offense because its description of the videos did not establish that they depicted lewdness and not mere nudity. Defendant did not include this issue in his Rule 604(h)(2) motion for relief, and he raises it for the first time on appeal.

¶ 19          Rule 604(h)(2) provides, "Upon appeal, any issue not raised in the motion for

relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Defendant acknowledges he did not raise this issue earlier and argues defense counsel provided ineffective assistance by not including it in his motion for relief. Alternatively, defendant urges us to consider his argument's merits via a plain-error analysis. However, in *People v. Nettles*, 2024 IL App (4th) 240962, ¶¶ 24-36, this court rejected similar efforts to gain appellate review of waived claims not raised in a motion for relief, finding neither ineffective assistance nor plain error were applicable. Defendant urges us to abandon *Nettles*, claiming our rationale there arose from a faulty understanding of article 110 of the Code. We disagree.

¶ 20 *Nettles* properly considered the law governing pretrial detention, both statutory and case law. We and all our sister districts have cited approvingly and faithfully followed *Nettles* in the past year. See *People v. Claver*, 2025 IL App (1st) 251041-U; *People v. Romero*, 2025 IL App (2d) 240581-U; *People v. Jackson*, 2024 IL App (3d) 240479-U; *People v. Jackson*, 2025 IL App (4th) 241411-U; *People v. Luebke*, 2025 IL App (5th) 241208-U. We are confident in our prior conclusions that arguments invoking ineffective assistance of counsel and plain error cannot save defendants from waiver. Following *Nettles*, we decline to review defendant's argument that the State did not prove he committed a detainable offense because it did not prove lewdness, as defendant waived the issue by not including it in his Rule 604(h)(2) motion for relief. See *Nettles*, 2024 IL App (4th) 240962, ¶¶ 25-26, 34.

¶ 21 Second, defendant argues the State failed to show by clear and convincing evidence that no conditions could mitigate the threat he posed to the community. Defendant contends the State presented no evidence he would not comply with conditions, and so the trial court's detention decision relied " 'on a general perception' of [OSPS's] alleged deficiencies" in

monitoring defendant's compliance. We disagree with both the premise and conclusion of defendant's argument.

¶ 22    The record confirms the State presented evidence relating to conditions of release. The trial court stated it considered the State's probable cause proffer, State's exhibit No. 1, which outlined OSPS's operations, Detective Meints's testimony, and the pretrial detention report. In reaching its decision to detain defendant, the court considered this evidence vis-à-vis the factors outlined in section 110-5(a)(1)-(5) of the Code (725 ILCS 5/110-5(a)(1)-(5) (West 2024)), namely, the nature and circumstances of the charged offense, the weight of the evidence against defendant, defendant's history and characteristics, the nature and seriousness of the threat defendant poses, and the nature and seriousness of the risk defendant could obstruct the criminal justice system if he were released. Based on the evidence, the court found the charged child pornography offenses to be "very serious," and it observed the "strength of the State's case is apparent." The court found defendant's history and characteristics cautioned against release, noting he allegedly had multiple victims, exhibited deceptive practices or behaviors, and had once lobbied a teenager for sex by saying "age is just a number." As for the nature and seriousness of the threat, the court found, based on the evidence, defendant's release could invite him to "prey[ ] upon the most vulnerable individuals of society" because of his "history of committing offenses targeted at that particular age range of victim." As for the final factor, the risk of defendant obstructing the criminal justice system, the court noted OSPS's specific limitations in monitoring this specific defendant. The court initially found OSPS cannot do home visits so "[t]here's no way to be sure that this defendant actually complies with conditions; and, again, that's based on the outlines that, the outline provided by the State." It went on to note that OSPS relied on self-reporting, which it labeled "a very big concern for this Court." The court

explained the available pretrial release conditions, like GPS monitoring, house arrest, no electronic devices, or no contact orders, do "not assuage any concerns I have with this defendant complying with conditions of pretrial release."

¶ 23　　　Contrary to defendant's argument, these are not " 'general perception[s]' " of OSPS's "alleged deficiencies." The State presented evidence and the trial court relied upon it in deciding defendant should be denied pretrial release. We cannot say the court's detention decision stands against the manifest weight of the evidence—the opposite conclusion is not clear, nor is it unreasonable, arbitrary, or not based on the evidence. *Morgan*, 2025 IL 130626, ¶ 21.

¶ 24　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　For the foregoing reasons, we affirm the trial court's judgment.

¶ 26　　　Affirmed.