NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260237-U

NO. 4-26-0237

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| KYLE J. SHIRLEY, | ) | No. 25CF475 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding the State had proven by clear and convincing evidence that defendant posed a real and present threat to the community and no conditions of pretrial release could mitigate the threat he posed.

¶ 2     Defendant, Kyle J. Shirley, appeals the denial of his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). He argues the State failed to prove that (1) the proof was evident or the presumption great that he committed a detainable offense, (2) he posed a real and present threat to the safety of any person or the community, and (3) no condition or combination of conditions of pretrial release could mitigate the threat he posed. He therefore asserts that the trial court erred in denying him pretrial release. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On December 4, 2025, defendant was charged with unlawful possession with intent

to deliver cocaine (400 to 900 grams) (720 ILCS 570/401(a)(2)(C) (West 2024)), unlawful possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2024)), and unlawful possession with intent to deliver cannabis (500 to 2,000 grams) (720 ILCS 550/5(e) (West 2024)).

¶ 5　　　　On December 4, 2025, the State filed a verified petition to detain defendant pretrial. The following day, a hearing was held on the petition.

¶ 6　　　　At the hearing, the State proffered that, on December 1, 2025, Detective Justin Holden obtained warrants to search defendant's person, his red 2010 Dodge Ram, his white 2009 Cadillac, and three addresses associated with him in Freeport, Illinois: 718 East Stephenson Street, 820 South Carroll Avenue, and 421 West Chestnut Street. Earlier, in October 2024, Holden had reviewed a report from another detective that was completed after searching the phone of an individual named Jerome Howard. This search revealed messages between defendant and Jerome regarding an apparent drug transaction.

¶ 7　　　　Prior to obtaining the warrants in his own case, Holden reviewed additional police reports and discovered that defendant was listed as the owner of the 421 West Chestnut Street residence, that Gwenn and Howard Shirley were listed as the owners of the 820 South Carroll Avenue residence, and that Howard was listed as the owner of the 718 East Stephenson Street residence. The report further confirmed that defendant had used Gwenn as an emergency contact in the past and had listed her as his mother.

¶ 8　　　　The State proffered that, on November 25, 2025, Holden saw defendant and his red 2010 Dodge Ram at 718 East Stephenson Street. Defendant appeared to be locking the door to the building. Holden also saw defendant's Dodge Ram at the same address the next day. He also reviewed a prior case in which defendant had reported a burglary at the 718 East Stephenson Street residence in January 2016. At that time, defendant listed this address as his own.

¶ 9 Holden also reviewed defendant's criminal history and discovered that he had been convicted of manufacturing and delivery of a controlled substance in two prior cases. Defendant was also involved in an incident in which he discarded cocaine and cannabis after an officer observed him participating in a drug transaction. Through his investigation, Holden also discovered that defendant did not possess a valid firearm owner's identification (FOID) card.

¶ 10 On December 3, 2025, officers executed the search warrants on the three Freeport residences. Holden participated in the search of 718 East Stephenson Street. Upon his arrival, he observed defendant's Dodge Ram parked just west of the residence and a white 1971 Chevrolet El Camino registered to defendant parked directly behind the home.

¶ 11 The officers approached the residence, announced their presence, and unsuccessfully attempted to enter the building. They heard "what sounded like a subject inside running on the first floor." Shortly thereafter, defendant opened the door and was placed in handcuffs. Officers searched the home and did not locate any other people inside.

¶ 12 The search of 718 East Stephenson Street yielded $23,316 in cash. Officers found $14,040 of that amount in the first-floor dining room on a table, banded with rubber bands and stuffed inside of an empty sandwich baggie box. They found $6,501 stuffed between couch cushions and on a coffee table in the living room. Officers also located a wallet containing defendant's driver's license and social security card in the living room. The remaining $2,775 was located in a small box in the desk of a first-floor bedroom. Due to the denomination of the bills, Holden believed they were the result of drug sales.

¶ 13 Officers also located two trash bags that contained 36 bags of a substance that field tested positive for cannabis. The total weight of the substance, not including packaging, was 1,019.4 grams. In the same bedroom where they found the cannabis and $2,775 in cash, officers

also located clothing for an adult male.

¶ 14    The State continued that while the search of 718 East Stephenson Street was ongoing, another detective informed Holden that three handguns and a substantial amount of cocaine had been recovered at 820 South Carroll Avenue. The cocaine and two of the handguns were recovered in a file cabinet that also contained paperwork belonging to defendant. Officers also found a large amount of "coins and silver" in the residence.

¶ 15    At the residence on 820 South Carroll Avenue, officers found a digital scale in the home's kitchen sink, clear baggies, a glass mixing container with a residue in it that field tested positive for cocaine, and a razor blade. Holden knew that the clear sandwich baggies were used to package drugs like cocaine and cannabis after they were weighed on a digital scale similar to the one that was located. Officers also found a 29.1 gram "chunk" of a substance that field tested positive for cocaine in the kitchen sink and an additional chunk on the floor.

¶ 16    Officers found letters addressed to defendant at 820 South Carroll Avenue, as well as 718 East Stephenson Street. Letters addressed to Howard and Gwenn Shirley were also found at 820 South Carroll Avenue. The deed for 820 South Caroll Avenue was found in defendant's Dodge Ram and listed him as the owner. Officers also found a letter from the Illinois Tollway addressed to defendant at 820 South Caroll Avenue.

¶ 17    The search warrant executed on 421 West Chestnut Street yielded no evidence. However, the State proffered that a police K-9 had alerted to multiple areas in the home.

¶ 18    In addition to the State's proffer, the trial court considered defendant's pretrial investigation report. The report stated that defendant had scored 3 out of a possible 14 points on the Virginia Pretrial Risk Assessment Instrument-Revised, indicating he had a 9.8% chance of violating pretrial release conditions. The report also detailed defendant's criminal history, which

included multiple convictions related to drug delivery, a conviction for battery, and two convictions for resisting a peace officer. His most recent conviction was in 2013 for the possession of cannabis. He also had five past instances of failing to appear for court. Three of the failures to appear occurred pretrial.

¶ 19 The trial court asked defense counsel if she wished to make a proffer. Counsel noted that the State's proffer contained no allegations that defendant violated any laws prior to the execution of the search warrant, which she described as a "pretty significant" fact. The court responded that it believed she was making an argument concerning the legality of the search warrant and, at that point in the case, a motion to suppress the warrant was not ripe. The court continued,

> "I understand what you began to argue about the Eighth Amendment [(U.S. Const., amend. VIII)] and what could possibly end up being a motion to suppress. But right now, we're going to solely address the verified petition to deny pretrial release and not consider the aspects related to the probable cause included in the search warrant."

¶ 20 The State argued that it had shown the proof was evident or the presumption great that defendant had committed a detainable offense because the proffer established that a large amount of drugs and multiple firearms were located at addresses associated with defendant. It further argued that defendant posed a threat to the community due to the nature of the crime, defendant's possession of firearms, and his history of various offenses. It also argued that no conditions of release could mitigate the threat defendant posed because defendant had committed his alleged crimes from inside his own home and the trial court could impose no restrictions that would prevent this criminal activity from happening again while defendant was on pretrial release.

The State also noted that defendant had three prior failures to appear, suggesting that he would again fail to appear in the instant case.

¶ 21 Defense counsel repeated the argument that the State's search warrants lacked probable cause. She further noted that defendant's past convictions occurred 12 or more years ago, he was a father of four, and he had lived in Freeport his entire life. She argued that he had sufficient contacts in the area to show that he was not "going anywhere" if granted pretrial release.

¶ 22 The trial court found the State had proven its petition to detain by clear and convincing evidence. It therefore denied defendant pretrial release.

¶ 23 Defendant filed a motion to reconsider, in which he again argued that the search warrants were not based on probable cause. He concluded that he should be released because "any continued pretrial detention that rest[ed] upon an unlawful arrest offend[ed] the guarantees of due process."

¶ 24 After multiple pretrial disclosures from the State regarding the search warrants, their bases, and what was recovered, defendant filed an amended motion to reconsider. In this motion, he abandoned his probable cause arguments and instead argued that the State had not proven that he posed a real and present threat to the safety of the community because the State's proffer had not alleged that the firearms recovered bore any connection to the alleged drug activity. He also argued that the State had not proven that no conditions of release could mitigate any threat he posed because no contraband had been found in the search of the 421 West Chestnut Street address and, therefore, he would have had a location to reside in on pretrial release that was not associated with his alleged crimes, contrary to the State's argument.

¶ 25 The trial court denied defendant's amended motion for reconsideration.

¶ 26 This appeal followed.

¶ 27                              II. ANALYSIS

¶ 28        Defendant argues that the State failed to prove by clear and convincing evidence that (1) he committed each charged offense, (2) he posed a real and present threat to the community, and (3) no conditions or combination of conditions could mitigate the threat he posed.

¶ 29        The Code presumes that every person charged with an offense is eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). When seeking to deny a defendant pretrial release, the State must prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case; and (3) that no condition or combination of conditions of pretrial release can mitigate the threat the defendant poses. *Id.* § 110-6.1(e)(1)-(3). " 'If the State fails to carry its burden on any of these three facts, the presumption remains, and detention is unlawful.' " *People v. Cousins*, 2025 IL 130866, ¶ 25 (quoting *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 32, citing 725 ILCS 5/110-6.1(e) (West 2022)).

¶ 30        Where the State proceeds solely by proffer at the pretrial detention hearing, we are not bound by the trial court's factual findings and review the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 31                              A. Waiver

¶ 32        Defendant first argues that the State failed to prove that he committed a detainable offense. See 725 ILCS 5/110-6.1(e)(1) (West 2024). However, defendant did not raise this issue in his amended motion to reconsider. Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) requires the filing of a motion for relief prior to appealing a denial of pretrial release. The rule further provides that "[u]pon appeal[,] any issue not raised in the motion for relief, other than errors

occurring for the first time at the hearing on the motion for relief, shall be deemed waived." *Id.* Accordingly, we deem this issue waived. See *People v. Courtland*, 2025 IL App (4th) 250916, ¶ 20 (declining to review the defendant's argument that the State did not prove he committed a detainable offense where he did not raise the issue in his motion for relief).

¶ 33                                B. Dangerousness

¶ 34        Defendant next argues that the State failed to prove he posed a real and present threat to the safety of the community. He argues that he was arrested at a residence were officers allegedly found drugs but no firearms and that his criminal history was old. He claims that the trial court found him dangerous based solely on the charges against him and did not conduct an individualized assessment of the particular facts of his case.

¶ 35        When determining if a defendant poses a real and present threat to any person or the community, a trial court may consider several factors. See 725 ILCS 5/110-6.1(g) (West 2024). These factors include the nature and circumstances of any offense charged, including whether it was a crime of violence or involved a weapon; the history and characteristics of the defendant, including any criminal history indicative of violent, abusive, or assaultive behavior; the nature of the threat defendant poses; the age and physical condition of the defendant; and whether the defendant is known to possess or have access to weapons. *Id.* § 110-6.1(g)(1-5), (7).

¶ 36        We find the State proved by clear and convincing evidence that defendant posed a real and present threat to the community. Although the Code requires a dangerousness determination to be based on the specific facts of the case, it nevertheless allows a trial court to consider the more general fact of the nature and circumstances of the offense charged. *Id.* § 110-6.1(g)(1). Here, after a search warrant executed on various residences associated with defendant yielded large amounts of controlled substances, defendant was charged with unlawful possession

with intent to deliver cannabis and cocaine. These alleged offenses necessarily pose a danger to the community. Defendant was not charged with possession of a small amount of a controlled substance for personal use. Rather, the State's proffer suggested that defendant was involved in a well-established drug-selling operation in which he sold to members of the community, necessarily putting them at risk.

¶ 37 Further, although firearms may not have been present at the address where defendant was found at the time of the search warrants, the searches nevertheless yielded multiple firearms at other residences associated with defendant. Indeed, multiple firearms were found in the same filing cabinet as a large amount of controlled substances. Defendant's argument that we cannot conclude that the presence of multiple firearms in the same location where he allegedly was packaging large amounts of drugs for distribution proved that the firearms were used in connection with the distribution of the drugs is unconvincing. Indeed, even if the firearms were not used in connection with the delivery of drugs, they would still bear on defendant's dangerousness. See *id.* § 110-6.1(g)(7) (stating a court may consider a defendant's access to weapons when determining if he poses a real and present threat to the community).

¶ 38 Finally, defendant has a significant criminal history. We acknowledge that his most recent conviction was in 2013. However, his criminal history nevertheless shows a pattern of possessing and distributing controlled substances. Further, defendant has other convictions demonstrating his propensity toward violent behavior, including convictions for battery and resisting a peace officer.

¶ 39 Considering the nature of defendant's charges; the threat that drug distribution poses to the community at large, especially when coupled with firearms; his apparent ability to acquire multiple firearms without a FOID card; and his criminal history, we find the State has

proven by clear and convincing evidence that defendant would pose a real and present threat to the community if granted pretrial release.

¶ 40                                    C. Conditions of Release

¶ 41         Defendant also argues that the State failed to prove that no conditions of release could mitigate the threat he posed. He argues that, if granted pretrial release, he could have resided at the 421 West Chestnut Street residence, where officers did not find any firearms or drugs. He also argues that his "substantial ties" to the community supported pretrial release, noting that he owns his home, has a high school diploma, and has completed some college coursework.

¶ 42         We find the State has also met its burden of proof on this issue. While defendant may have had a residence to return to besides those at which drugs were allegedly found, this does not necessarily indicate that conditions of pretrial release would be effective in mitigating the threat he posed. The relevant factor here is not that defendant perhaps did not engage in criminal conduct at one particular residence but that he allegedly *did* engage in criminal conduct at two of his other residences. This suggests that defendant would not need to leave his home to continue his illegal conduct. A pretrial release condition of home confinement, therefore, would be ineffective.

¶ 43         Further, defendant has a history of failing to appear for pretrial court appearances and, allegedly, seeking out firearms, despite being prohibited from owning them based on his status as a felon. This indicates defendant's disregard for orders of the court and willingness to violate any conditions placed on him. This in turn casts doubt on defendant's potential compliance with any other pretrial release conditions that might be imposed. We therefore find that no conditions of release the trial court could impose would prevent defendant from continuing his illegal conduct or alleviate the risk he poses to the community.

¶ 44                                 III. CONCLUSION

¶ 45            For the reasons stated, we affirm the trial court's judgment.

¶ 46            Affirmed.